At this point we'll hear United States v. Patel. Morning. Good morning, your honors. Melissa Baldwin representing Sahil Patel, defendant appellant. Mr. Patel, a first time non-violent offender, who's an Indian immigrant merely proficient in English, living with his mother and working at a Dunkin' Donuts during the conspiracy, was sentenced to 14 and 1⁄2 years. This sentence was substantively unreasonable and procedurally unreasonable. This 14 and 1⁄2 year sentence placed Mr. Patel squarely in between the corporate defendants in Rigos, who committed a $100 million crime for which they obtained more than $1 million in gross receipts. This demonstrates the substantive unreasonableness of the sentence that resulted from a guideline that routinely produces sentences that contravene 3553A's requirement and that sentences be no greater than necessary. In Dorvey, this court examines the child porn guidelines and found that those guidelines, because they routinely recommend sentences that exceed what 3553A requires in routine run-of-the-mill cases, need to get careful consideration by the district court, keeping in mind that substantively unreasonable sentences often result. What's the basis for saying the court didn't give consideration to the factors that you claim militate in favor of a lower sentence? The basis for that is the court's comments at sentencing, indicating that the court believed the guidelines would give discretion to punish the masterminds of this fraud more harshly. Well, the guidelines recommended sentence with the base offense level, specific offense characteristics, and role adjustment was a 37, which recommended a range of 210 to 262 months. So this exceeds the 20-year statutory maximum for wire fraud. So we're saying this squarely puts it in Dorvey's corner and the district court would have allowed a 20-year sentence, which is six years less than your client received. The concern here on the piling on of enhancements is that each enhancement, unless I'm overlooking something, did capture something different. And so I'm not sure that they captured different aspects of the crime. I should be clear on that. I'm not sure how we would be concerned about the application of the guidelines in this case. What's your argument on that? Well, our argument, just to clarify, because the government responds to an impermissible double counting, which is not our argument. Our argument is the 2B1.1 guidelines have a variety of specific offense characteristics that, if applied uncarefully, can lead to unreasonable results, like the one in this case. So the piling on, it's not that the court should not do it under the guidelines, but that the court needs to consider whether applying those enhancements in determining the sentence results in a sentence that abides by the parsimony principle. Why is 14 years unreasonable when there were hundreds of victims extorted of over a million dollars, and how they were extorted was by being threatened with law enforcement action? Now, I mean, there are other aggravating facts, too, but just focusing on those, why is a 14-year sentence substantively unreasonable? Because of the nature and circumstances of the offense, and the offender make this, honestly, a shocking sentence, in that when the guidelines put Mr. Patel at the statutory maximum for wire fraud, when everyone acknowledges he's a relatively low-level player in this conspiracy, he is not a mastermind behind it. And so the 14-and-a-half-year sentence is too harsh, given what he has done, and moreover, violates 3553A, but by really giving the district court nowhere else to go with the criminal actors we know are out there and more culpable. He may be low-level, because we don't know how high the upper levels are, but he was high enough to have people in this conspiracy who were working for him. He referred to them himself as his underlings. So if you have underlings, it seems to me you're a leader in some degree, aren't you? Well, I would say he qualifies as a leader under the guidelines by virtue of managing, knowing participants. However, characterizing him as a leader of the fraud itself I think is inaccurate, and by imposing a guideline sentence- Didn't he provide names or contact information for potential victims? No, the district court made a clearly erroneous finding on that point. So the government, first of all, this fact was not asserted in the PSR. Rather, the allegation that Mr. Patel was involved in the lead sheets came in the government's June 9th sentencing submission. And in that submission, they make an argument that Mr. Patel obtained these lead sheets, and then they attach an Excel spreadsheet they purport came from an email account he, Mr. Patel, had control over. Mr. Seidler even conceded that. He said at the sentencing, I mean, he is part of this chain. He gets a leadership enhancement here, right? So he's aware of how this all works. He had a role in it with the debit cards, but I mean, he knew about the call centers and the leads. I mean, how could he not? He did know about the call centers, and he did have knowledge. However, the district court's finding was that he was involved in obtaining these lead sheets, which the district court indicated was an additional aggravating factor that should increase his sentence. And so, and this was just not proven on the record. Mr. Patel explicitly denied obtaining, sending, or being involved in that conduct, and the government didn't put forth enough evidence to substantiate that finding. What the district court actually said was that your client did not organize the call center, but contributed names to it, and the support for that is the government's demonstration of his access to an email account where lead sheets were found, and his concession that he knew the sheets were used to identify victims. On a preponderance finding, why isn't that enough? That's not enough because simply showing that Mr. Patel had access to an electronic storage container for which an unidentified number of other people also had access is insufficient to find he actually affirmatively engaged in the conduct. Judge Droney pointed out it would be inconceivable that he wouldn't have known this and have participated in it. So, I mean, the logical inference is possible even if it's not direct evidence. So, again, on a preponderance standard, I'm having trouble understanding why this is a clearly erroneous finding of fact by the district court. We would say that this falls under United States versus Jew law, which is just you have explicitly denied conduct and an unsubstantiated allegation. I mean, our argument is that submitting an Excel spreadsheet purportedly attached to an email account that co-conspirators, including Mr. Patel, had access to is insufficient for that finding. Did the PSR rely on that? No, it was never in the PSR. This came up after the PSR was prepared in the government's June 9th sentencing submission. Is it the case that your client interposed no objection to the findings in the PSR and the findings in the PSR would support the range that the court arrived at and your client was sentenced at the bottom of that range? I'm over, but. Go right ahead. So, we argue, so although there was no objections to the PSR, repeatedly at the sentencing hearing, there were arguments referring to the guidelines overstating the seriousness of Mr. Patel's conduct and arguing under the 3553A factors for a reasonable sentence, which the guidelines recommendation did not provide. So, we think based on that, there's sufficient grounds to find Mr. Patel did object to this guideline sentence. Thank you. You've reserved some time? Yes, two minutes for about, thank you. We'll hear you then. Thank you. Good morning, your honors. May it please the court, Andrew Adams for the United States. I was the prosecutor with responsibility for the case before Judge Hellerstein as well. Your honors, the district court committed no error, plain or otherwise, procedural or substantive in pronouncing the sentence for Mr. Patel in what amounted to a long-running, widespread, exploitative, and extortionate fraud that affected hundreds of people and for which he made much money over the course of at least two years. With respect to the appellant's first claim here with respect to the erroneous or purportedly erroneous factual findings, there was ample support in the record before Judge Hellerstein that Mr. Patel not only had access to a shared account that contained multiple lead sheets, a fact which was not disputed and Mr. Seidler even agreed with in front of Judge Hellerstein. There was also facts put forth in the government sentencing submissions that Mr. Patel, in an email account exclusively used by him, in fact, named with a variant of his own name, contained what was submitted as Exhibit N, which was a single lead sheet from that particular account. And there was no dispute at any point before Judge Hellerstein that that was his email account or that that was a lead sheet that supports the entire basis for the identity theft. And you're arguing this is plain error review? That's correct, Your Honor. This was not disputed before the district court. With respect to, briefly with respect to the other claim of purported error here, that is Judge Hellerstein's consideration of the co-conspirators or the effect on those co-conspirators, not only did Judge Hellerstein understand both the impact on the victims, that is the people who were being called by these call centers, he also understood that there were people working for Mr. Patel, some of them knowingly, some of them unwittingly, who were also negatively impacted or potentially negatively impacted.  and no confusion in Judge Hellerstein's mind reflected in the record that there are two different categories of affected persons and that both of them are well within reason as people who could be considered victims or types of victims of Mr. Patel's offense. In particular, that second category of people are the ones that Mr. Patel himself reveled in exploiting. These are the people that he considers dumb, who he says treat him like a god because he gives them a little bit of money. That goes to, I think ultimately, the substantive reasonableness of the sentence. Mr. Patel did not merely submit false claims to somebody and bilk people out of money in a sort of impersonal way. He assisted in a crime that put people in fear. It put people in fear of law enforcement, put people in a position  felt that they were already in trouble, did so over and over again, and did so using young, naive, often co-conspirators or unwitting facilitators that worked in his direction. It's simply incorrect to say that he was a low-level member of this conspiracy. He participated in virtually every aspect other than actually placing telephone calls. And the basis for the leadership points is clear. And also, it was undisputed. With respect to the guidelines calculation, generally, Judge Hellerstein had first support for each of the enhancements, as we've already discussed. As Judge Raji, you alluded to earlier, there is a separate basis for applying each one of those enhancements, not simply double-counting or piling on. And then, beyond the guidelines with respect to the 3553A factors, there's also plenty of support in the record. The Judge Hellerstein considered all of the 3553A factors. He explicitly says that at a few points during the sentencing. I've already spoken to substantive reasonableness. Unless the panel has further questions, I'll rest on the brief. Thank you. Alwyn, you have a couple minutes to rebuttal. Thank you, Your Honor. So, to begin, the contention that Mr. Patel was involved in basically every aspect of this conspiracy and therefore was a low-level participant is refuted by the government's own sentencing submission, which was a 2015 testimony    And I'm not going to go into the details of this, but I think that in and of itself, that the fraud went about without a hitch, without the Dunkin' Donuts employee getting debit cards, show he is not, in fact, a mastermind of the fraud that should be getting a guideline sentence near the max. I'll just say that, so, 2B1.1 has caused many problems   It's evident in this case where you have a $1.2 million fraud of someone who, admittedly, of someone who's not one of the masterminds with a guideline recommendation over the statutory max. So, we would ask that the court exercise its responsibility to patrol the boundaries of reasonableness by applying Dorby's requirement that district courts carefully consider 2B1.1 with the recognition that this is a guideline that routinely recommends unreasonable results that contravene 3553A's factors. There's no other questions. Thank you. Thank you both. Thank you. We will reserve decision. In the case of Barrow v. Farago, we are taking that on submission. In the case of United States v. Alvarez, it's taken on submission. That's the last case on calendar. Please adjourn court. Court is adjourned.